1
2
3
4
5
6
7
8
9                  UNITED STATES DISTRICT COURT
10                 CENTRAL DISTRICT OF CALIFORNIA
11
12   MICHAEL ROSADO,              ) NO. CV 13-3485-AS
                                  )
                                  )
13               Plaintiff,       ) **MEMORANDUM AND OPINION**
                                  )
14         v.                     )
                                  )
15   CAROLYN W. COLVIN, Acting    )
     Commissioner of Social       )
16   Security,                    )
                                  )
17               Defendant.       )
     _____  )
18
19
20                      **PROCEEDINGS**
21
22      On May 21, 2013, Plaintiff, proceeding pro se, filed a
23   Complaint pursuant to 42 U.S.C. § 405 seeking review of the
     Commissioner's denial of Plaintiff's application for disability
24   benefits. (Docket Entry No. 3). On June 5, 2013, the Magistrate
25   Judge previously assigned to this matter dismissed the Complaint
26   with leave to amend for lack of jurisdiction. (Docket Entry No.
27   6). On June 14, 2013, Plaintiff filed an Amended Complaint.
28   (Docket Entry No. 8). On September 5, 2013, the matter was

                                1

transferred and referred to the current Magistrate Judge. (Docket Entry No. 15). On January 9, 2014, Defendant filed an Answer and the Administrative Record ("A.R."). (Docket Entry Nos. 27, 29). The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 16, 17; see also Docket Entry Nos. 34, 35).

On February 13, 2014, Defendant filed a "Notice of Non-Receipt of Plaintiff's Initial Portion of Joint Stipulation." (Docket Entry No. 30). On that same day the Court issued a Minute Order directing Plaintiff to provide Defendant with his portion of the Joint Stipulation no later than February 28, 2014. (Docket Entry No. 31). On March 3, 2014, Defendant filed a second Notice of Non-Receipt of Plaintiff's Portion of the Joint Stipulation, with a declaration from counsel indicating that he had spoken to Plaintiff, who acknowledged receiving the Court's February 13, 2014, Minute Order. (Docket Entry No. 32). On March 4, 2014, the Court issued a Minute Order ordering Plaintiff to file a declaration regarding his failure to comply with the Court's Order by March 11, 2014, and setting forth a schedule for the preparation of the Joint Stipulation. (Docket Entry No. 33).

On March 5, 2014, Plaintiff filed a document informing the Court, among other things, that he had filed a Mandamus Petition in the Ninth Circuit Court of Appeal. (Docket Entry No. 34). On March 7, 2014, the Court issued an order construing Plaintiff's March 5, 2014, filing as his portion of the Joint Stipulation, and provided Plaintiff an opportunity to file a supplemental statement no later than March 17, 2014, addressing his contention that the

2

decision of the Administrative Law Judge ("ALJ") misstates, mischaracterizes, or omits any of the material medical evidence and/or testimony of record and identifying the issue or issues that he is raising as the grounds for reversal and/or remand. (Docket Entry No. 35). In response, on March 17, 2014, Plaintiff filed a document entitled "Stipulations[.] Compliance of Court Orders. S.S.D.I. Medicare[.] Plaintiff'[s] Brief." ("Supp'l Br."). (Docket Entry No. 37).

On March 31, 2014, Defendant filed "Defendant's Brief." (Docket Entry No. 38).

On April 11, 2014, the Ninth Circuit issued an Order denying Plaintiff's Mandamus Petition because he "has not demonstrated that this case warrants the intervention of this court by means of the extraordinary remedy of mandamus." (Docket Entry No. 39).

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff, formerly working as an electrical contractor, is wheelchair bound after suffering an on-the-job injury resulting in paraplegic diseases of the spinal cord.[1] (A.R. 12, 335, 336). Plaintiff was previously awarded Supplemental Security Income benefits ("SSI") with an onset date of July 2, 2010. (Id.). On November 4, 2011, Plaintiff filed an application for disability

---

[1] Apparently, when wiring a building, another worker "threw some wires" down on Plaintiff, resulting in catastrophic injury. (A.R. 584).

3

benefits alleging an onset date of October 17, 2007.[2] (Id. 17, 28-31). After the application was initially denied on December 3, 2011, and subsequently denied on reconsideration on December 5, 2011, for lack of insured status, Plaintiff requested a hearing. (Id. 12).

On June 19, 2012, the ALJ held a video hearing at which Plaintiff, proceeding pro se, appeared and testified. (Id. 12, 613-60). On June 28, 2012, the ALJ issued a decision denying benefits because Plaintiff did not have sufficient earnings in the forty-quarter period preceding October 17, 2007, his alleged disability onset date, and was therefore not insured under Title II of the Social Security Act ("Act") at the time of his disability. (Id. 17). The ALJ found that during the forty-quarter period preceding October 17, 2007, Plaintiff had earned only seventeen of the required twenty quarters of coverage necessary to meet the requirement for insured status. (Id.). On March 29, 2013, the Appeals Council denied review. (Id. 4-7).

## PLAINTIFF'S CONTENTION

Plaintiff contends that the ALJ erred in his assessment and calculation of Plaintiff's insured status when he refused to consider (1) Plaintiff's tax returns for 2001, 2004, and 2006; and

---

[2] Plaintiff has filed three applications for disability benefits. The applications submitted on January 27, 2009 and November 4, 2011 were denied for lack of insured status. (A.R. 12). The application submitted on February 18, 2009 was denied because Plaintiff had been engaging in substantial gainful activity despite his impairment. (Id. 49).

4

(2) Plaintiff's 2002 Form 1099, as evidence of self-employment earnings.  (Supp'l Br. 2-8).

## STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine if:  (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used proper legal standards.  42 U.S.C. § 405(g); see Carmickle v. Comm'r, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997).  It is relevant evidence  "which a reasonable person might accept as adequate to support a conclusion." Hoopai, 499 F.3d at 1074; Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)).  To determine whether substantial evidence supports a finding, "a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 1997) (citation omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (inferences "reasonably drawn from the record" can constitute substantial evidence).

This Court "may not affirm [the Commissioner's] decision simply by isolating a specific quantum of supporting evidence, but must also consider evidence that detracts from [the Commissioner's] conclusion." Ray v. Bowen, 813 F.2d 914, 915 (9th Cir. 1987)

(citation and internal quotation marks omitted); <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007) (same). However, the Court cannot disturb findings supported by substantial evidence, even though there may exist other evidence supporting Plaintiff's claim. <u>See</u> <u>Torske v. Richardson</u>, 484 F.2d 59, 60 (9th Cir. 1973). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, [a] court may not substitute its judgment for that of the [Commissioner]." <u>Reddick</u>, 157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

**APPLICABLE LAW**

In order to qualify for disability benefits:

> Every person claiming disability benefits must show that he is an insured. To have insured status, a claimant must have earned either $50 in wages or $100 in self-employment income for at least 20 quarters in the 40-quarter period immediately prior to the date of disability. 20 C.F.R. § 404.130(b)(2). The Commissioner tracks the social security earnings record of a wage-earner by taxes paid by the employer, but an individual who is self-employed must file a personal income tax return Form 1040 with a Schedule SE (self-employment) and a Schedule C (business profits and loss statement), and pay his own social security

6

taxes.   If he does not, the Commissioner's records will show no self-employment income. Without a record of self-employment income, there will be no coverage for purposes of insured status.

The Social Security Act provides that the Commissioner's records "shall be evidence . . . of the amounts of wages paid to, and self-employment income derived by, an individual and of the periods in which such wages were paid and such income was derived." 42 U.S.C. § 405(c)(3).   However, the Act allows for the record to be amended if errors are brought to the Commissioner's attention within three years, three months and fifteen days of the year in question.  42 U.S.C. § 405(c)(1)(B); 20 C.F.R. § 404.802. . . . After expiration of the time limitation, the records may still be corrected . . . depending on whether there is an "entry" or an "absence of entry" in the records, and upon whether the source of earnings was wages or self-employment income.

*If there is "entry":* Section 405(c)(4)(A) provides that the Commissioner's records - with changes made pursuant to paragraph (5) - of the

7

amount of wages or self-self-employment income derived is "conclusive." Paragraph 5 permits the Commissioner to change or delete any entry with respect to wages or self-employment income . . . or to include in his records any omitted item of wages or self-employment income to conform his records to tax returns or portions thereof . . . filed before the time expired.

If there is an "absence of an entry": Section 405(c)(4)(B) provides that the Commissioner's record as to *wages* shall be *presumptive* evidence that no wages were paid, but § 405(c)(4)(C) provides that the records as to *self-employment income* shall be *conclusive* evidence that no self-employment income was derived unless the claimant filed a tax return of self-employment income for the year in question before the time limit expired.

Chapman v. Apfel, 236 F.3d 480, 482 (9th Cir. 2000) (footnote omitted)(emphasis in original); (see also A.R. 14, 15-16).

To be eligible for disability benefits, a claimant must, among other things, be insured for disability purposed and be disabled on that date. 42 U.S.C. 416(I); Chapman, 236 F.3d at 482 ("Every person claiming disability benefits must show that he is an insured."). Disability insured status is calculated through the

8

application of four rules. In this case, only Rule I is applicable. (Def't's Br. 3 (citing 20 C.F.R. § 404.130(a), (b)). Under that rule, an individual must earn at least twenty quarters of coverage in the forty-quarter period preceding the date of alleged disability. 20 C.F.R. § 404.130(a), (b)). The number of quarters of coverage in a calendar year, up to a maximum of four, is based on the individual's total earnings for that year. 20 C.F.R. §§ 404.140(c), 404.143). For example, in the year 2000, a worker was entitled to obtain one quarter of coverage for each increment of $780 in earnings. Therefore, a worker who earned at least $3,120 during that year would receive all four quarters of coverage for that calendar year. (See Def't's Br. 3 (citing POMS RS 00301.250)).[3]

## DISCUSSION

After consideration of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material[4] legal error.

///

///

---

[3]  POMS is the Social Security Program Operations Manager System. The POMS, while "entitled to respect," does not otherwise "impose judicially enforceable duties on either this court of the ALJ." Carillo-Yeras v. Astrue, 671 F.3d 731, 735 (9th Cir. 2011) (internal citations and quotation marks omitted).

[4]  The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (stating that an ALJ's decision will not be reversed for errors that are harmless).

**ANALYSIS**

In this case, Plaintiff's insured status expired on March 31, 2006 because Plaintiff had sufficient income in the 40-quarter period preceding this date to qualify for disability benefits. (A.R. 15).  However, because Plaintiff alleges a disability onset date of October 17, 2007, he is only eligible for disability benefits under Title II if he obtained sufficient earnings in the 40-quarter period preceding October 17, 2007 to maintain insured status through that date.  20 C.F.R. § 404.130(b).  Plaintiff claims he has sufficient earnings to maintain insured status through October 17, 2007. (Supp'l Br. 1-2).  The ALJ disagreed. (A.R. 17-18).

The ALJ properly considered Plaintiff's earnings - reflected in the Commissioner's record - for the forty quarters (ten years) prior to October 17, 2007 and found that Plaintiff had the following quarters of coverage:  0 in 1998, 2001, 2003, 2004, and 2006; 1 in 2002; and 4 each in 1999, 2000, 2005, and 2007, for a total of seventeen quarters of coverage.  (A.R. 17).

**1.  The 2001, 2004, and 2006 Tax Returns**

At the hearing, Plaintiff testified that he had self-employment earnings in 2001, 2004, and 2006 (id. 15, 133-35), and that he had timely filed tax returns documenting his self-employment earnings for those years (id. 15, 193, 623-25, 633). Plaintiff contends that a file note, dated January 5, 2012, in his

10

social security file regarding "Hearing Issue," supports his position. The note states that Plaintiff had "submitted" copies of his 2001, 2004, and 2006 tax returns, "which do show he had self employment income. It appears his tax returns were self prepared and there may be some math errors and/or entries made on wrong lines which may be the reason IRS did not report his self employment income to SSA." (Id. 103). The note also suggested that "[i]f the 2001, 2004, 2006 earnings are credited . . . , [Plaintiff's date last insured] will be 9/30/2007," and, therefore, he would be eligible for disability benefits.[5] (Id.). Plaintiff's contention is without merit. The January 5, 2012 note did not indicate *when* Plaintiff's tax returns were filed, it only stated that these tax returns had been "submitted." (Id.). As set forth below, the date on which these tax returns were *filed* is critical to a determination of whether the income reported can be considered in determining Plaintiff's insured status.

The ALJ's review of the *certified* documents and transcripts from the IRS revealed that although Plaintiff filed tax returns reflecting earnings from self-employment for 2001, 2004, and 2006, those returns were not filed until February 2012 and that Plaintiff did not file any tax returns for 2002 and 2003. (Id. 16 (citing id. 368-96); see, e.g., id. 371). The Court's review of the record

---

[5]    The January 5, 2012, note indicated that "[i]f it is established that these [2001, 2004, and 2006] earnings are to be credited," then Plaintiff's prior February 18, 2009, disability application should be reopened and a disability determination made on that application, in which case the date of eligibility would be April 2008 so long as the onset date of October 17, 2007, was also established. (A.R. 300).

confirms that the 2001 return was received by the IRS on January 6, 2012 (id. 225); the 2004 return was received on December 15, 2011 (id. 300); and the 2006 return was received on December 7, 2011 (id. 260) - all well after the three year, three month, and fifteen-day limitation period, and there is no record of tax returns filed for the years 2002 and 2003.

The Commissioner's regulations provide that an individual's Social Security Administration earnings record may be corrected to agree with tax returns of self-employment income *only* if the tax return was filed before the three year, three month, fifteen day time limit ended.   20 C.F.R. §§ 802, 404.822(b)(2)(i). Here, Plaintiff's tax returns for 2001, 2004, and 2006, reporting self-employment income, were not filed within that time limit.[6] Therefore, the Administration's record of Plaintiff's earnings becomes conclusive evidence of his lack of self-employment income or wages for those years and cannot now be corrected.   Id. § 404.803; see also 42 U.S.C. § 405(c)(5)(F) (no amount of self-employment income of an individual for any taxable year may be corrected if the return or statement was filed after the expiration of the time limit).

Accordingly, substantial evidence supports the ALJ's finding that Plaintiff is not entitled to obtain any quarters of coverage based on the self-employment income reported in his late-filed tax

---

[6]    Plaintiff does not contend that he requested the Commissioner's records for this time period to be amended within the statutory time period of three years, three months and fifteen days.

returns for the years 2001, 2004, and 2006.

### 2.  The 2002 Form 1099

Plaintiff also contends that a 2002 Form 1099-MISC ("Form 1099") on file with the IRS, in the amount of $5,963.00, conclusively demonstrates his self-employment earnings in that year, overcomes the presumption that the absence of any entry of self-employment earnings in the agency's records means that there were no such earnings, and permits the Commissioner to correct Plaintiff's earnings records to reflect this income despite the fact that he did not file a 2002 tax return.[7]  (Supp'l Br. at 4-8; A.R. 130, 247, 536).  Plaintiff asserts that if these earnings were included in his earnings record, he would have the required quarters of coverage and would be eligible for insured status. (Supp'l Br. at 4-8).  The Court disagrees.

Plaintiff's failure to timely file a 2002 tax return reporting the self-employment income on the form 1099 he received for that year or to seek a correction of the Administration's records which do not reflect the earnings reported on the form 1099 is fatal to his argument.  The Ninth Circuit has held that a form 1099 is not considered a timely-filed "tax return" permitting correction of self-employment earnings, even where, as here, the form is provided

---

[7]   The Commissioner's records for Plaintiff's 2002 earnings are consistent with the IRS records for 2002 which indicate that Plaintiff had wages of $1,687.00.  This amount was included in determining that Plaintiff had one quarter of coverage in 2002. (A.R. 186, 392-94, 536-38).

to the IRS in a timely manner by a disinterested third party. Chapman, 236 F.3d at 486 (failure to file tax returns implies that net income was below the social security minimum threshold required for filing self-employment tax returns).

In Chapman, the Ninth Circuit reviewed conflicting circuit court decisions on the issue of whether 1099 forms may be used to prove insured status and held that, under 42 U.S.C. § 404(c)(5)(F), a "timely filed tax return of self-employment income, not just 1099 forms, is required to overcome the otherwise conclusive presumption that the absence of an entry of self-employment earnings means that there were no such earnings." Id.; see also Soc. Sec. Ruling 82-20c; and Yoder v. Harris, 650 F.2d 1170 (10th Cir. 1981) (1099 forms do not constitute tax returns or portions thereof because they reflect the individual's gross income and do not reflect expenses or losses and, after the limitation period has expired, a claimant may *only* prove that he had self-employment income during those years in which the Administration's records show none, from information filed with timely-filed income tax returns);[8] POMS RS 02201.020(C)(1)(b) ("The timely filing of Form 1099 by a third

---

[8]  Social Security Ruling 82-20c recognizes "that many wage-earners with low incomes may not file income tax returns yet will be credited with payment of social security taxes from the employer's report on W-2 forms timely filed. However, the payment of social security taxes on earnings from wages is substantially different from self-employment income. For the latter, the amount of taxes owed is dependent on the amount of net income, rather than the gross income that is reported on a form 1099, and the taxpayer is required to pay the social security taxes with a filed tax return or in quarterly estimated payments. For wage-earners, the entry on the W-2 form itself evidences the withholding of tax by the employer. Soc. Sec. Ruling 82-20c, at n.4.

party is not considered filing a tax return . . . for purposes of correcting the [earnings record]"); but cf. Acquiescence Ruling 86-20(6) (pursuant to the Sixth Circuit's holding in Grigg v. Finch, 418 F.2d 661 (6th Cir. 1969), even where receipt of self-employment income is documented *only* by IRS 1099 forms timely filed by disinterested third parties, workers in states within the Sixth Circuit are credited with self-employment income even when the time limit has run for filing an income tax return reflecting self-employment income and for correcting the earnings record).[9]

Because a timely filed tax return of self-employed income is required to overcome the otherwise conclusive presumption that the absence of self employment earnings in the Administration's records

---

[9] Notwithstanding the Ninth Circuit's rejection of the ruling in Grigg, the facts in that case are distinguishable from the circumstances presented here. In Grigg, the claimant received self employed income in the years 1956 and 1957 and did not file tax returns for those years but requested that the tax refund due on his filed tax returns for the years 1958 and 1959 be credited towards his estimated taxes for 1957. The Sixth Circuit held that Plaintiff was entitled to have his earnings record reflect his self-employment income for 1956 and 1957 because the Commissioner had actual or constructive knowledge that Plaintiff had earned sufficient self employment earnings - from the form 1099s and the tax returns for the subsequent years - to receive credit for the quarters of coverage for those years.   Grigg, 418 F.2d at 664. Here, Plaintiff cannot establish the Commissioner's actual or constructive knowledge of his 2002 self-employment earnings but even if such knowledge could be established, the Ninth Circuit has found the Court's ruling in Grigg to contravene the "text and structure of the statute.   Section 405(c)(4)(C) clearly provides that when the Commissioner's records show no entry of self-employment earnings, and the time for amending the records has passed, a claimant may add self-employment income to his earnings record only by proving htat he timely filed a federal income tax return of self-employment income." Chapman, 236 F.3d at 486.

means that there were no such earnings, and because defendant did not file a tax return for the 2002 year, the ALJ did not err by failing to consider the form 1099 that Plaintiff received for the 2002 year as proof of self-employment income in determining Plaintiff's insured status. Accordingly, the ALJ's decision to deny benefits is supported by substantial evidence.

**CONCLUSION**

For all of the foregoing reasons, the decision of the Administrative Law Judge is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  August 29, 2014.

_/s/_
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

16